**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

WILDEARTH GUARDIANS,

        Plaintiff,

    v.

LISA JACKSON, in her official capacity as
Administrator, United States Environmental Protection Agency,

        Defendant.

---

## COMPLAINT

---

### INTRODUCTION

1.     This is a straightforward, Clean Air Act deadline suit.  42 U.S.C. §§ 7401-7671q.

Plaintiff, WildEarth Guardians ("Guardians") filed a petition (the "Petition") with Defendant,

Lisa Jackson, the Administrator of the U.S. Environmental Protection Agency ("EPA") nearly

six months ago.  See 42 U.S.C. § 7661d(b)(2) (authorizing such petitions).  Guardians' Petition

asked the Administrator to object to an air pollution permit (the "Permit") issued by the

Wyoming Department of Environmental Quality ("DEQ") to EnCana Oil and Gas (USA) Inc.

("EnCana") to operate the Pavillion Compressor Station and Natural Gas Processing Facility

("Pavillion Compressor Station") in Fremont County, Wyoming.  The Clean Air Act expressly

requires that the Administrator "shall grant or deny such petition within 60 days."  42 U.S.C. §

7661d(b)(2).  Although more than 60 days have passed, the Administrator has not acted on

Guardians' Petition and is in violation of her mandatory and nondiscretionary duty under the

Clean Air Act (the "Act" or "CAA").  Guardians seeks an order compelling the Administrator to

obey the CAA and grant or deny its Petition.  Guardians also seeks a declaration that the

Administrator is in violation of the Act.

## JURISDICTION, VENUE, AND NOTICE

2.      This Court has subject matter jurisdiction over the claim in this Complaint

pursuant to the citizen suit provision of the Clean Air Act, because the Administrator has failed

to perform a non-discretionary act or duty under the CAA.  42 U.S.C. § 7604(a)(2) (citizen suit

provision of the CAA).  This Court has federal question jurisdiction, because Guardians claims a

violation of the Clean Air Act, a federal statute.  28 U.S.C. § 1331 (federal question jurisdiction).

The requested relief is authorized by statute.  28 U.S.C. § 2201 (declaratory judgment); 28

U.S.C. § 2202 (injunctive relief); and 42 U.S.C. § 7604(d) (costs and attorney fees).

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because a

substantial part of the events and omissions giving rise to Guardians' claim occurred in the

District of Colorado.  The EPA Regional Office in Denver, Colorado is responsible for

reviewing permits from the State of Wyoming and will play a primary role in granting or

denying Guardians' Petition.  Additionally, Jeremy Nichols, Guardians' Climate and Energy

Program Director, the drafter of Guardians' Petition works in Guardians' Denver office.

4.      Guardians properly gave the Administrator notice of the violation alleged in this

Complaint and of Guardians' intent to bring suit to remedy that violation.  See 42 U.S.C. §

7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3.  More than 60 days have passed since the

Administrator received Guardians' notice letter.  The Administrator has not remedied the

violations alleged in Guardians' notice letter and this Complaint by granting or denying

Guardians' Petition.

## PARTIES

5.     Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization with a major office in Denver, Colorado.  Guardians is dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding the Earth's climate and air quality.  WildEarth Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment.  Guardians has approximately 10,000 members and supporters, many of whom live and recreate in Wyoming and other areas affected by pollution from the Pavillion Compressor Station.

6.     Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e).  As such, Guardians may commence a civil action under 42 U.S.C. § 7604(a).

7.     Guardians' members live, raise their families, work, recreate, and conduct educational, research, advocacy, and other activities near the Pavillion Compressor Station and the areas impacted by the facility's air pollution.  As a part of its efforts, Guardians regularly participates in the pubic permitting process for facilities that emit air pollution.  Guardians spends money and time on these processes with the aim of ensuring that permits, such as that issued to the Pavillion Compressor Station, protect and improve air quality, as well as comply with relevant laws and regulations.  Guardians and its members also have a substantial interest in ensuring that EPA complies with federal law, including the requirements of the CAA. The Administrator's unlawful withholding of a decision on Guardians' Petition harms Guardians and its members.  The CAA gives Guardians a procedural right to a timely decision on its Petition. This interest, as well as Guardians' organizational interest in participating in and influencing the permitting process are injured by the Administrator's failure to respond to Guardians' Petition. Guardians' and its members' interests have been, are being, and will continue to be, irreparably

3

harmed by EPA's failure to act on Guardians' Petition for an objection to the Pavillion

Compressor Station's Permit.

8.      Because the Administrator has not responded to Guardians' Petition, the

organization's members and volunteers cannot be certain that the Pavillion Compressor Station's

Permit conforms to the requirements of the CAA.  The Administrator's failure to respond thus

prevents Guardians' members and volunteers from being certain that the Pavillion Compressor

Station's Permit protects them from exposure to pollutants emitted by that facility to the extent

required by law.  The Administrator's unlawful withholding of a decision on Guardians' Petition

harms Guardians and its members by allowing the Pavillion Compressor Station to release more

pollution.  The Permit allows the Pavillion Compressor Station to release pollutants that degrade

the air, environment, economy, and scenery used by Guardians' members.  These pollutants

harm the economic, health, aesthetic, recreational, procedural, and organizational interests of

Guardians and its members.

9.      The Administrator's unlawful withholding of action on Guardians' Petition

prevents Guardians from challenging an unfavorable EPA decision or from benefiting from a

favorable decision on the Petition.  EPA's decision on the Petition, if favorable, is likely to result

in changes to the Permit that would reduce pollution from the facility.  An unfavorable decision

on the Petition would allow Guardians to bring a challenge to EPA's decision.  A favorable

decision on the Petition or a successful challenge to an adverse decision would likely result in a

reduction in the level of pollution the facility's Permit would allow and a consequent reduction

in the harm to Guardians and its members.  The CAA violations alleged in this Complaint have

injured and continue to injure the interests of Guardians and its members.  Granting the relief

requested in this lawsuit would redress these injuries by compelling EPA action that Congress

4

determined to be an integral part of the regulatory scheme for protecting human health from the effects of unregulated air pollution.

10.      Defendant LISA JACKSON is the Administrator of the EPA.  The Administrator is responsible for implementing the CAA, including the requirement to grant or deny Guardians' Petition within 60 days.  Ms. Jackson is sued in her official capacity.

## REQUIREMENTS OF THE CLEAN AIR ACT

11.      The Clean Air Act ("CAA") aims "to protect and enhance the quality of the Nation's air resources."  42 U.S.C. § 7401(b)(1).  To help meet this goal, the 1990 amendments to the CAA created the Title V permit program—an operating permit program that applies to all major sources of air pollution.  See 42 U.S.C. §§ 7661-7661f.

12.      A primary purpose of the Title V permitting program is to reduce violations of the CAA and improve enforcement by recording in a single document all of the air pollution control requirements that apply to a major source of air pollution.  See New York Public Interest Research Group v. Whitman, 321 F.3d 316, 320 (2nd Cir.2003).  Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. See 42 U.S.C. § 7661a(a).

13.      The CAA provides that the EPA Administrator may approve state programs to administer the Title V permitting program with respect to sources within their borders.  See 42 U.S.C. § 7661a(d).  The Administrator approved Wyoming's administration of its Title V permit program in 1999.  See 64 Fed. Reg. 8,523-8,526 (February 22, 1999).  The Wyoming Department of Environmental Quality ("DEQ") is responsible for issuing Title V permits in Wyoming.

14.      Before a state with an approved Title V permit program can issue a Title V

permit, the State must forward the proposed Title V permit to EPA.  <u>See</u> 42 U.S.C. §

7661d(a)(1)(B).  EPA then has 45 days to review the proposed permit.  EPA must object to the

issuance of the permit if EPA finds that the permit does not comply with all applicable

provisions of the CAA.  <u>See</u> 42 U.S.C. § 7661d(b)(1).

15.     After EPA's 45-day review period expires, "any person may petition the

Administrator within 60 days" to object to the proposed permit.  42 U.S.C. § 7661d(b)(2).

16.     Once EPA receives such a petition, the CAA requires that "[t]he Administrator

shall grant or deny such petition within 60 days after the petition is filed.  42 U.S.C. §

7661d(b)(2).

17.     If the Administrator objects to a permit, the permit must be changed.  42 U.S.C. §

7661d(b)(3).

## FACTUAL ALLEGATIONS

18.     The Pavillion Compressor Station is a major source of air pollution in Fremont

County, Wyoming.  It is designed to compress and process natural gas produced from wells in

the area.  The Compressor Station consists of a number of large, high-powered compressor

engines, several glycol dehydration units to remove water from natural gas, heaters, an

emergency flare, a thermal oxidation unit, distillation towers, refrigeration for the recovery of

natural gas liquids, and storage tanks.

19.     The Pavillion Compressor Station annually emits approximately 281.8 tons of

nitrogen oxides, 119.7 tons of carbon monoxide, 55.6 tons of volatile organic compounds, and

21.3 tons of hazardous air pollutants, including benzene, a known carcinogen, and formaldehyde,

a probable carcinogen.

20.     The DEQ submitted the proposed Title V Permit for the Pavillion Compressor

6

Station to EPA on March 20, 2009.  The EPA's 45-day review period for the Permit ended on May 4, 2009.  EPA did not raise any objections to the permit.

21.     On July 2, 2009, Guardians filed its Petition requesting that the Administrator object to the issuance of the Title V permit for the Pavillion Compressor Station.  Guardians' Petition raised the following issues: (1) Emission Limits for Unit 170, the Ingersoll Rand Compressor Engine, are unsupported and should be strengthened; (2) The Permit fails to require sufficient monitoring; and (3) The Permit fails to ensure compliance with prevention of significant deterioration requirements.

22.     Guardians' Petition was timely filed within 60 days following the conclusion of EPA's review period and failure to raise objections in accordance with section 505(b)(2) of the CAA.

23.     Guardians' Petition was based on objections to the Permit that were raised with reasonable specificity during the public comment period for the draft permit.

## CLAIM FOR RELIEF

### Failure to Grant or Deny Guardians' Petition

24.     Every allegation set forth in this Complaint is incorporated herein by reference.

25.     The Administrator has a mandatory duty to grant or deny Guardians' Petition within 60 days after Guardians filed the Petition.  42 U.S.C. § 7661d(b)(2).

26.     It has been more than 60 days since the Administrator received Guardians' Petition requesting that EPA object to the Pavillion Compressor Station Title V permit.

27.     As of the date of the filing of this Complaint, EPA has not granted or denied Guardians' Petition.

28.     Accordingly, EPA has violated and continues to violate the CAA, 42 U.S.C. §

7

7661d(b)(2).

29.     This CAA violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the CAA's citizen suit provision.  42 U.S.C. § 7604(a)(2).  EPA's violation is ongoing, and will continue unless remedied by this Court.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff WildEarth Guardians requests that this Court enter judgment providing the following relief:

A.      A declaration that EPA has violated the CAA by failing to grant or deny Guardians' Petition requesting that EPA object to the Pavillion Compressor Station Title V permit;

B.      An order compelling EPA to grant or deny Guardians' Petition for an objection to the Pavillion Compressor Station Title V permit in accordance with an expeditious schedule prescribed by the Court and to publish in the Federal Register notice of granting or denying Guardians' Petition within ten working days of EPA's decision;

C.      An order retaining jurisdiction over this matter until such time as EPA has complied with its non-discretionary duties under the CAA;

D.      An order awarding Guardians its costs of litigation, including reasonable attorney's fees; and

E.      Such other and further relief as the Court deems just and proper.

Respectfully submitted this 22nd day of December 2009.


s/ James J. Tutchton
WildEarth Guardians
1536 Wynkoop St., Suite 301
Denver, CO  80202
Tel: (720) 301-3843
jtutchton@wildearthguardians.org

*Attorney for Plaintiff WildEarth Guardians*